UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCDONALD'S CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHPOINT REALTY GROUP, LLC, <br><br> Defendant. | No. 1:22-cv-3896 <br><br><br> **COMPLAINT** |

Plaintiff McDonald's Corporation ("McDonald's") for its complaint against Defendant Southpoint Realty Group, LLC ("Defendant") alleges as follows:

## INTRODUCTION

1.      This action arises from Defendant's breach of a commercial ground lease that clearly and unambiguously requires Defendant to repair and maintain the common parking and driveway areas located outside the boundaries of the small portion of the shopping center property leased by McDonald's.

2.      Defendant wrongly refused to comply with its contractual obligations, causing McDonald's to pay more than $109,000 to repave a badly damaged portion of the common parking and driveway area located outside the boundaries of its leased premises.

3.      McDonald's seeks an award of damages for the costs it has incurred due to Defendant's breach of the lease, and a declaration that Defendant is required to maintain and repair the parking and driveway areas outside of the premises leased by McDonald's for the remainder of the lease term and any extension thereof.

1

## PARTIES

4. Plaintiff McDonald's is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is in Chicago, Illinois.

5. Defendant is a limited liability company organized and existing under the laws of the State of New York. Upon information and belief, Solomon Meisels—a citizen of the State of New York—is the only member of Defendant.

## SUBJECT MATTER JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2). Complete diversity of citizenship exists between the parties because McDonald's is a citizen of the States of Delaware and Illinois, and, upon information and belief, Defendant is a citizen of the State of New York by virtue of the citizenship of its only member. The amount in controversy exceeds $75,000, exclusive of interests and costs.

7. This Court has general personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 301 because its principal place of business is in New York and its affiliations with New York are so continuous and systematic as to render it essentially at home in New York.

8. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because Defendant's principal office is located at 24 Rutledge Street, Brooklyn, New York.

## FACTUAL BASIS FOR CLAIMS

**A. Background**

9. In January 1972, McDonald's entered into a ground lease (the "Lease") with Greater Elmira Realty Corporation ("Original Landlord") for a portion of the shopping center

property (the "Demised Premises") located at 1600 Cedar Street, Elmira, New York ("Southtown Plaza") for the purpose of constructing a McDonald's restaurant on the Demised Premises.[1]

10. McDonald's opened its restaurant in Southtown Plaza in May 1973.

11. In addition to the McDonald's restaurant, Southtown Plaza contains a large commercial building that houses a number of retail stores, as well as parking lot and driveway areas that contain more than 325 total parking spaces.

12. The Demised Premises is a pad site located in the southwest corner of Southtown Plaza. The approximate boundaries of the Demised Premises leased by McDonald's are outlined in green in the satellite image below.

**Satellite Image of Southtown Plaza (Source: Google Maps)** 



---

[1] The ground tenant under the original Lease was McDonald's predecessor-in-interest, Franchise Realty Interstate Corporation. The Third Amendment to Lease dated February 1, 1980 identifies McDonald's as the lessee, as successor-in-interest to its affiliate, Franchise Realty Interstate Corporation. To avoid confusion, McDonald's is identified herein as the lessee for the entirety of the Lease.

13. Only 12 full parking spaces and 2 partial parking spaces are located inside the boundaries of the Demised Premises.

**B. McDonald's and Original Landlord Amend the Lease Multiple Times to Make Clear that the Landlord is Responsible for Maintaining the Parking and Driveway Areas Outside the Demised Premises, and McDonald's is Responsible for Maintaining the Parking and Driveway Areas Inside the Demised Premises.**

14. The Lease was originally silent as to whether McDonald's or the landlord was responsible for maintaining parking and driveway areas and keeping them in good condition and repair, either inside or outside of the Demised Premises. A true and correct copy of the Lease, dated January 27, 1972, is attached hereto as **Exhibit A**.

15. Instead, the Parking Easement section of the Lease provided that the landlord and McDonald's "may erect curbstops in order to define the demised premises and shopping center areas so long as there remains at least one passage which permits the free flow of traffic to and from the adjacent commercial area and so long as said curbstops do not detract from the mutual and common parking rights of [McDonald's]."

16. In 1972, McDonald's and Original Landlord executed a First Amendment to the Lease providing that all parking spaces inside the boundaries of the Demised Premises "shall be subject to use by other tenants [of Southtown Plaza], their employees, customers and agents, for parking purposes only." First Amendment to the Lease, § 3(a). This provision had the effect of allowing any tenant or visitor to Southtown Plaza to park in the parking spaces on McDonald's Demised Premises, regardless of whether they are at the shopping center to visit the McDonald's restaurant or another tenant. A true and correct copy of the First Amendment to the Lease, dated December 11, 1972, is attached hereto as **Exhibit B**.

17. The First Amendment to the Lease expressly provides that the landlord "agrees to keep the common parking and driveway areas in the shopping center reasonably free from snow,

ice and debris **and to keep said areas in good condition and repair**." First Amendment to the Lease, § 3(b) (emphasis added).

18. However, the First Amendment to the Lease left room for disagreement as to whether the landlord or McDonald's was responsible for keeping the parking and driveway area <u>inside</u> the boundaries of the Demised Premises (which could now be used by non-McDonald's customers and, therefore, could be considered "common" parking areas) free from snow, ice, and debris and in good condition and repair.

19. In 1977, a dispute arose about Original Landlord's refusal to reimburse McDonald's for costs McDonald's incurred to have the parking lot paved.

20. In January 1978, McDonald's filed suit against Original Landlord in the Supreme Court of New York, Chemung County seeking the refund of certain overpayments of rent and damages in the amount of $30,000 to compensate it for the costs incurred due to the landlord's "fail[ure] and refus[al] to keep the common parking and driveway areas in the shopping center reasonably free from snow, ice and debris and to keep said area in good condition and repair."

21. Original Landlord counterclaimed, seeking alleged damages arising from McDonald's construction of a sign on a portion of the shopping center property outside the Demised Premises.

22. McDonald's and Original Landlord settled the litigation later that year, first by signing a settlement term sheet in June 1978 and then by executing a Second Amendment to the Lease two months later. A true and correct copy of the Second Amendment to the Lease, dated August 10, 1978, is attached hereto as **Exhibit C**.

23. Section 3 of the Second Amendment to the Lease memorialized the parties' agreement about maintenance and repair of the parking and driveway areas and made clear that

5

McDonald's was responsible for maintaining the parking and driveway area inside the Demised Premises. That section also gave McDonald's the right, <u>but not the obligation</u>, to stripe, maintain and repair a portion of the parking and driveway areas outside of the Demised Premises.

24. Specifically, Section 3 of the Second Amendment to the Lease states:

> [T]he maintenance and repair provision referred to in the Amendment to Lease shall be amended as follows: [McDonald's] shall assume all obligations regarding landscaping, parking lot striping, snow removal, the maintenance and repair of the parking lot and common areas **located on the demised premises** for the lease term and any extension thereof. [McDonald's] shall also have the right to landscape, stripe, remove snow, maintain and repair the area outlined in red on the survey of C.P. Hoffman dated October 17, 1977 attached hereto and made a part hereof as Exhibit B. [Landlord] hereby gives to [McDonald's] the right to perform the above stated obligations.

Second Amendment to the Lease, § 3 (emphasis added).

25. The "area outlined in red" on the referenced survey is the disputed, western portion of the shopping center's driveway and parking area that Defendant now claims that McDonald's is responsible for maintaining and repairing. A true and correct copy of the survey of C.P. Hoffman dated October 17, 1977 is attached hereto as **Exhibit D**.

26. The "area outlined in red" on the survey attached as Exhibit D is approximately the area outlined in red in the satellite image below.



6

27. Section 3 of the Second Amendment to the Lease resolved the ambiguity created by the First Amendment to the Lease, which made the landlord responsible for maintaining and repairing the common parking and driveway areas located <u>outside</u> of the Demised Premises, but did not clearly address who was responsible for maintaining and repairing the parking and driveway area located <u>inside</u> the Demised Premises.

28. Under the Second Amendment to the Lease, the landlord remained responsible for the common parking and driveway areas located outside of the Demised Premises, and McDonald's assumed responsibility for the common parking and driveway area located inside the Demised Premises.

29. McDonald's and Original Landlord entered into a Third Amendment to the Lease in February 1980, which is not relevant to the present dispute.

**C. Defendant Purchases the Property and Enters into Two Lease Amendments with McDonald's, the Second of Which Reaffirmed the Parties' Existing Rights and Obligations to Repair and Maintain the Common Parking and Driveway Areas.**

30. Defendant purchased Southtown Plaza from Original Landlord in November 2004 and became McDonald's new landlord under the Lease, as successor-in-interest to Original Landlord.

31. In December 2006, McDonald's and Defendant executed a Fourth Amendment to the Lease, which is not relevant to the present dispute.

32. In May 2007, McDonald's and Defendant executed a Fifth Amendment to the Lease. A true and correct copy of the Fifth Amendment to the Lease, dated May 13, 2007, is attached hereto as **Exhibit E**.

33. Among other things, the Fifth Amendment to the Lease allowed McDonald's to demolish the existing restaurant on the Demised Premises, build a new restaurant on the Demised Premises, and extend the term of the Lease for a period of 99 years.

34. The Fifth Amendment to the Lease provided for a one-time, lump sum rent payment of $375,000 at the beginning of the 99-year extension period (the "Extended Term"). This payment represented the entirety of rent owed by McDonald's for the Extended Term. Fifth Amendment to the Lease, p. 3.

35. The Fifth Amendment to the Lease also provided McDonald's with the right to automatically extend the Lease for an additional 99 years after the expiration of the Extended Term, to February 11, 2206. Fifth Amendment to the Lease, p. 4.

36. The Fifth Amendment to the Lease did not amend McDonald's or Defendant's existing rights and obligations under the Lease relating to maintenance of the common parking and driveway areas.

37. Directly above the parties' signature lines, the Fifth Amendment to the Lease states: "Except as modified by this Amendment, the Lease is ratified and confirmed by the parties." Fifth Amendment to the Lease, p. 15.

38. Thus, McDonald's and Defendant's rights and obligations with respect to the maintenance of the common parking and driveway areas remained the same after the Fifth Amendment to the Lease as they were before the Fifth Amendment to the Lease.

39. Exhibit A to the Fifth Amendment contains a legal description of the Demised Premises and refers to the Demised Premises as the "McDonald's Property."

40. Consistent with the Parking Easement in the original Lease, Exhibit A to the Fifth Amendment states that Defendant and McDonald's "may erect curb stops in order to define the McDonald's Property and the Shopping Center Property areas, so long as there remains at least one passage which permits the free flow of traffic to and from the Shopping Center Property and

so long as said curb stops do not detract from the mutual and common parking rights of McDonald's."

41. And consistent with the First Amendment to the Lease, Exhibit A to the Fifth Amendment to the Lease provides that the parking spots located on the Demised Premises may be used by customers of other tenants in the greater Shopping Center Property. Specifically, it provides that the "McDonald's Property, as used by [McDonald's], from time to time, for parking purposes, shall be subject to use by other Shopping Center tenants, their employees, customers and agents, for parking purposes only."

42. Also consistent with the First and Second Amendments to the Lease, Exhibit A to the Fifth Amendment to the Lease provides that McDonald's is responsible for maintaining the common parking and driveway areas located within the Demised Premises and that Defendant is responsible for maintaining all other common parking and driveway areas. Specifically, Exhibit A to the Fifth Amendment states: "[Defendant] agrees to keep the common parking and driveway areas of the Shopping Center Property reasonably free from snow, ice and debris and to keep said areas in good condition and repair," and that "[McDonald's] agrees to keep the parking lot and common areas of the McDonald's Property reasonably free from snow, ice and debris and to keep said areas in good condition and repair."

43. Thus, although the legal description of the Demised Premises set forth at Exhibit A to the Fifth Amendment to the Lease includes a description of the parties' obligations with respect to maintenance of the parking and driveway areas, the language is entirely consistent with the parties' obligations under the Lease as they existed before the Fifth Amendment.

44. Because the Fifth Amendment prominently states that "Except as modified by this Amendment, the Lease is ratified and confirmed by the parties" and because the Fifth

9

Amendment did not change the parties' rights and obligations relating to the parking and driveway areas, Defendant would still be responsible for maintaining the common parking and driveway areas outside of the Demised Premises even if Exhibit A to the Fifth Amendment to the Lease did not summarize the parties' existing rights and obligations as to these areas.

**D. Defendant Refuses to Comply with its Contractual Obligations to Maintain and Repair Common Parking and Driveway Areas Outside of the Demised Premises**

45. In June 2018, Kevin Hyde of McDonald's sent a letter to Defendant advising Defendant that "the entrance to the Shopping Center Property from Cedar Street directly in front of the Demised Premises and the surrounding asphalt for the common parking and driveways of the shopping center have severe cracks and potholes that are in need of repair." A true and correct copy of McDonald's letter dated June 18, 2018 is attached hereto as **Exhibit F**.

46. Pictures attached to the June 2018 letter showed the poor and hazardous condition of the parking and driveway areas at the time.








47. Mr. Hyde cited the relevant provisions of the Lease that require Defendant to maintain these areas and demanded that Defendant "cause the parking, driveway and common areas of the Shopping Center Property, including the areas in front of and adjacent to the

11

McDonald's Property, to be resurfaced to bring the surfaces to a level, smooth and evenly covered condition in compliance with the Lease by July 18, 2018."

48. Mr. Hyde advised Defendant that if Defendant "fail[ed] to comply with the terms of the Lease, McDonald's reserves the right to exercise all remedies available to it for [Defendant's] default under the Lease, as well as at law and in equity."

49. Sol Meisel responded via email on behalf of Defendant on July 19, 2018, stating: "It is our opinion that your claim is without merit. If McDonalds [sic] is willing to submit our dispute to binding arbitration we shall also be agreeable."

50. In October 2018, Kevin Hyde of McDonald's sent a second letter to Defendant concerning the severe cracks and potholes in the pavement in the common parking and driveway areas adjacent to the Demised Premises. A true and correct copy of the letter dated October 17, 2018 is attached hereto as **Exhibit G**.

51. Mr. Hyde explained that, due to Defendant's failure to timely comply with its contractual obligations, "McDonald's is undertaking repairs to the Common Area Asphalt without amending or waiving its rights or obligations under the Lease and while reserving its rights to seek reimbursement from [Defendant] for any and all associated costs."

52. Mr. Hyde enclosed a bid for the repair work and advised Defendant that "McDonald's will forward a copy of the final paid receipt of the invoice for repairs to the Common Area Asphalt, and [Defendant] shall reimburse McDonald's for any amounts incurred by McDonald's for such work within 30 days after receipt of McDonald's invoice."

53. Because Defendant refused to comply with its obligations under the Lease, McDonald's engaged a contractor to perform the required repairs to the common parking and driveway areas adjacent to the Demised Premises at a total cost to McDonald's of $109,257.50.

54. McDonald's sent a letter to Defendant dated June 10, 2019 enclosing a copy of the final invoice and demanding reimbursement of the $109,257.50 paid by McDonald's for repairs made to the common parking and driveway areas adjacent to the Demised Premises but Defendant has wrongly refused to reimburse McDonald's for the cost of this work. A true and correct copy of McDonald's letter dated June 10, 2019 is attached hereto as **Exhibit H**.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT

55. McDonald's restates and realleges each of the allegations set forth in Paragraphs 1 through 54 above.

56. The Lease requires Defendant to keep the common parking and driveway areas at Southtown Plaza outside of the Demised Premises in good condition and repair.

57. Defendant breached its obligation to keep the common parking and driveway areas at Southtown Plaza outside of the Demised Premises in good condition and repair.

58. As a result of Defendant's breach of its contractual obligations, McDonald's paid a third party $109,257.50 to repave the western portion of Southtown Plaza's common parking and driveway areas outside of the boundaries of the Demised Premises.

59. The portion of the common parking and driveway areas that McDonald's paid to have repaved is approximately identified as the area outlined in red below.



60. McDonald's is entitled to compensatory damages in the amount of $109,257.50, plus an award of prejudgment interest, due to Defendant's breach of the Lease.

## SECOND CAUSE OF ACTION:
## DECLARATORY JUDGMENT

61. McDonald's restates and realleges each of the allegations set forth in Paragraphs 1 through 60 above.

62. The Lease permits McDonald's to remain on the Demised Premises until February 11, 2206.

63. The common parking and driveway areas of Southtown Plaza outside of the Demised Premises will require maintenance and repair through the remaining term of the Lease and any extension period thereof.

64. An actual and justiciable controversy exists between McDonald's and Defendant about whether Defendant is required to maintain the common parking and driveway areas at Southtown Plaza outside of the Demised Premises and to keep those areas in good condition and repair.

65. McDonald's is entitled to judgment declaring that, for the remainder of the Lease term and any extension thereof, Defendant is required to keep all common parking and driveway areas at Southtown Plaza outside of the Demised Premises reasonably free from snow, ice and debris and to keep said areas in good condition and repair.

## **RELIEF SOUGHT**

WHEREFORE, McDonald's seeks judgment in its favor and against Defendant as follows:

a. awarding McDonald's compensatory damages in the amount of $109,257.50; and

b. awarding McDonald's pre- and post-judgment interest as allowed by law; and

c. declaring that, for the remainder of the Lease term and any extension thereof, the Lease requires Defendant to keep the parking and driveway areas at Southtown Plaza outside the boundaries of the Demised Premises reasonably free from snow, ice, and debris, and to keep said areas in good condition and repair; and

d. awarding such other necessary or proper relief as justice may require.

Dated: July 1, 2022

Respectfully submitted,

By: s/ Brendan M. Walsh
    Brendan M. Walsh, Esq. (BW2907)
    PASHMAN STEIN WALDER HAYDEN, P.C.
    The Woolworth Building
    233 Broadway, Suite 820
    New York, NY 10279
    (201) 270-4948

*Attorneys for Plaintiff McDonald's Corporation*